**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT B. SIMMS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JO ANNE BARNHART, COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **ADMINISTRATION** | : | **NO.  05-6203** |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, S.J.**                                         **JULY 26, 2007**

Robert Simms ("Simms") seeks review of the Commissioner of Social Security's
("Commissioner") decision to deny a period of disability, disability insurance benefits ("DIB"),
and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §401 et seq.
The parties filed cross-motions for summary judgment.[1]  Magistrate Judge Linda K. Caracappa
filed a Report and Recommendation ("R&R") finding substantial evidence supported the
Administrative Law Judge's ("ALJ") decision that Simms retained the residual functional
capacity to perform light work and could return to his past relevant work as a photographer.

Simms claims the ALJ erred because he: (1) did not reference the side effects of
Oxycodone in his decision; and (2) found Simms could return to his past relevant work as a
photographer without considering his limited experience and the lifting of heavy photography
equipment associated with work as a photographer.  Simms also argues the Magistrate Judge: did
not give due weight to the fact Simms has hepatitis C; did not rebut evidence of mild, left ulnar
neuropathy at the elbow, and moderate, chronic left C-7 radiculopathy; and gave controlling

---

[1]  Although Simms' filing is entitled "Brief and Statement of Issues in Support of Request
for Review," the court deems it a motion for summary judgment because Simms requests
retroactive disability benefits or, in the alternative, remand to the Commissioner.

weight to Dr. Bittner's opinion in one respect, but disregarded his letter dated March 29, 2005,

stating Simms' condition was chronic and debilitating.  The court has jurisdiction under 42

U.S.C. § 405(g).  The R&R will not be adopted, and the action will be remanded for further

findings consistent with this memorandum.

I.      **FACTS AND PROCEDURAL HISTORY**

      A.      **Background**

At the time of the ALJ decision, Simms was a 53-year-old man with a twelfth-grade

education and past work experience as a maintenance man and photographer.  He was diagnosed

with hepatitis C on October 27, 1999.  (R. 176.)  In September 2002, Simms was involved in a

car accident.  As a result of the accident, Simms suffered damage to his neck and nerves, and

pain in his arms.  He alleges a disability onset date of September 13, 2002.

Simms filed his first application for Social Security benefits on April 9, 2003.  (R. 109-

18.)  His claim was disapproved.  (R. 52-55.)  Simms filed the present application for Social

Security benefits on January 22, 2004.  (R. 90.)  His claim was disapproved by the Social

Security Administration.  Simms filed a request for an ALJ hearing (R. 56-59.); the ALJ decided

that Simms was not entitled to benefits.  Following an administrative appeal affirming the ALJ's

decision, Simms commenced this action for judicial review of the Commissioner's final decision.

      B.      **Medical evidence**

            1.      **Damage to Simms' neck and arms**

On September 17, 2002, following Simms' car accident, Dr. John Devenney concluded

from cervical spine x-rays that there was no gross fracture, but there were "moderate

degenerative changes from C5 through C7."  (R. 177.)  An MRI on Simms' cervical spine on

October 8, 2002, disclosed a "small central disc herniation at C3-4 and multilevel spondylosis with mild central and marked bilateral foraminal stenosis at C5-6 and C6-7 and mild foraminal stenosis at C4-5," according to Dr. Liem Marina  (R. 180.)

On February 3, 2003, Simms complained of pain in his neck and arms, and occasional pain in his hands.  (R. 186.)  Dr. Steven Song administered a cervical epidural steroid injection the same day.  (R. 185.)  On February 27, 2003, Simms reported that after a couple days of relief, his pain returned at the same severity as before the injection.  (R. 186.)

Simms underwent a psychological disability evaluation on May 15, 2003, at the request of the Pennsylvania Bureau of Disability Determination.  Dr. Christos Eleftherios reported that Simms complained of memory loss as a result of medication.  While Simms had a history of medical and drug abuse, he reported no emotional problems.  Dr. Eleftherios found at least a little depression was evident.  He concluded, "Thinking was clear, logical and goal-directed. There was no evidence of an overt underlying thought disorder."  (R. 289-91.)  With respect to Simms' ability to work, Dr. Eleftherios opined that in the area of "making occupational adjustments," Simms had "good" ability to follow work rules, relate to co-workers, deal with the public, interact with supervisors, and function independently, and "fair" ability to use judgment, deal with work stresses, and maintain concentration.  But Dr. Eleftherios noted Simms had some attention problems and his coping skills were weak.  In the area of "making performance adjustments," Dr. Eleftherios found Simms had "very good" ability to understand, remember, and carry out detailed but not complex job instructions, as well as simple job instructions, and "fair" ability with complex job instructions.  The doctor noted Simms had recent memory problems, but his comprehension was good.  In the area of "making personal-social adjustments," Dr.

3

Eleftherios opined that Simms had "very good" ability to maintain personal appearance, "good" ability to behave in an emotionally stable manner and relate predictably in social situations, and "fair" ability to demonstrate reliability.  (R. 293-95.)

Dr. Samuel M. Puleo found Simms had mild carpal tunnel syndrome with negative phalen sign and tinel sign and borderline EMG findings on September 25, 2003.  He did not think Simms was a candidate for carpal tunnel surgery.  (R. 318.)

Dr. Or Shachar, a neurologist, treated Simms from 2001 through 2004 for chronic headaches.  On March 21, 2002, Dr. Shachar reported that Simms suffered from "tension-type headaches" that had been significantly relieved over the past several months.  (R. 334.)  On August 1, 2003, he reported that Simms complained of neck pain.  On September 2, 2003, Dr. Shachar diagnosed Simms with cervical degenerative disc disease with chronic neck and bilateral upper extremity pain.  (R. 330.)  Though Simms was reluctant to try other medications, he agreed to take Pamelor to relieve his headaches and neck pain.  (R. 330.)  On October 7, 2003, Dr. Shachar found Simms' chronic neck pain and left upper extremity pain had improved significantly with his use of Pamelor.  (R. 329.)  The doctor prescribed increased Pamelor and discontinued Ambien.  (R. 329.)  On January 13, 2004, Simms reported to Dr. Shachar that he was sleeping fairly well and had an average level of pain, mainly in the left side of his neck and trapezius ridge, at a level of approximately 4/10 with occasional flare-ups to 8/10.  (R. 327.)  Simms had run out of Pamelor, but did not notice much difference since he stopped taking it.  (R. 327.)  Simms stated the medication was not particularly helpful, but he did not wish to try other medications because he was resigned to dealing with the pain.  (R. 327.)

Simms participated in physical therapy with Dr. Amy Ivory from September 24, 2002,

4

through May 6, 2003.  On April 1, 2003, Simms reported that it was not a good day for him, and Dr. Ivory assessed that Simms was fatigued because of his medications.  On April 29, 2003, Simms reported soreness because he "overdid it" in the garden that weekend, but he had no difficulty with the increased repetitions in his exercise program.  On May 1, 2003, Simms reported no difficulty with the exercise program.  On May 6, 2003, Simms reported his neck felt "OK" but his arms felt worse; Dr. Ivory recommended discharge because Simms' pain and strength levels had reached a plateau, and he could no longer benefit from physical therapy.  (R. 194-97.)

On March 8, 2004, Dr. Jason Brajer diagnosed Simms with cervical spondylosis and cervical herniated disks, multilevel.  (R. 416.)  He performed several facet blocks on C3-4 through C6-7 on Simms' left side, with fluoroscopic guidance; there were no problems or complications.  (R. 416.)  On May 3, 2004, Dr. Brajer performed repeat cervical facet blocks on Simms' right C3-4 through C6-T1 with fluoroscopic guidance.  (R. 410.)

Dr. Joseph A. Savestio performed a residual functional capacity assessment on March 9, 2004.  Dr. Savestio found Simms could occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday; but Simms' push and/or pull functions were limited in the upper extremities.  (R. 377.)  Dr. Savestio also found Simms was limited in lifting 20 pounds above his shoulders, but could lift 20-30 pounds on level.  (R. 379.)  Although Simms had a medically determinable impairment, Dr. Savestio opined that Simms' alleged functional limitations were not fully credible and not supported by objective medical evidence.  (R. 382.) The doctor concluded the overall evidence was consistent with a full range of light residual

5

functional capacity.  (R. 382.)

Dr. Justin Bittner, Simms' primary care physician, assessed Simms' ability to perform work-related activities on December 2, 2004.  He reported that, if allowed to change positions, Simms could sit for eight hours, stand for four hours, and walk for four hours in an eight-hour workday.  (R. 391.)  Simms could lift/carry or push/pull 25 pounds occasionally during an eight-hour workday, ten pounds frequently, and five pounds continuously.  (R. 392.)  Dr. Bittner reported no limitation in Simms' ability to push or pull during an eight-hour workday.  (R. 392.)  Simms had occasional restriction in bending, stooping, kneeling, rope climbing, crawling, crouching or squatting, and twisting or turning.  (R. 392-93.)  He had no restriction in reaching, climbing stairs, handling large items, or fingering small items.  (R. 393.)  Simms had no restriction in balance or exposure to extreme cold or heat, dust, fumes, and odors, noise, or vibration.  (R. 393.)  He had occasional restriction in exposure to unprotected heights, extreme humidity, extreme wetness, and driving.  (R. 393.)  He had total restriction in moving machinery.  (R. 393.)  Simms had no difficulty understanding or remembering, carrying out instructions, or concentrating or maintaining attention.  (R. 394.)  Dr. Bittner noted Simms experienced moderate to severe pain, and would experience this pain for the rest of his life.  (R. 394.)  Pain medications reduced its severity, but Dr. Bittner expected no improvement and likely deterioration in Simms' condition.  (R. 395.)

After the ALJ decided Simms was not entitled to Social Security benefits, Simms produced additional medical evidence to the Social Security Appeals Council.  After an electromyography test of Simms' left arm, performed on March 8, 2005, Dr. Shawn J. Bird reported no atrophy in the arms and normal strength with mild weakness in ulnar innervated hand

muscles.  (R. 465.)  There was evidence of moderate chronic denervation in Simms' C7 innervated muscles, and mild chronic denervation in his ulnar innervated hand muscles, but the other muscles studied were normal.  (R. 465.)  An MRI of Simms' lumbar spine, performed by Dr. Stephen Pripstein, revealed a herniated disc at the L4-L5 level, causing nerve root compression in the intervertebral foramen, and degenerative changes at the L5-S1 level.  (R. 463-64.)  A letter written by Dr. Bittner, dated March 29, 2005, reported chronic C7 nerve damage and an ulnar neuropathy at the elbow, a new finding.  (R. 463.)

        **2.**        **Hepatitis C**

Simms was treated for hepatitis C from 2001 through 2003.  On February 19, 2001, Dr. Kowalski of Jefferson Medical College noted that Simms reported moderate fatigue, but denied other hepatic, gastrointestinal, or systemic symptoms.  The doctor added that on physical examination, Simms "appear[ed] well."  (R. 440.)  On September 23, 2002, Dr. Kowalski wrote that Simms was eight weeks into "pegylated Interferon/ribaviron therapy for HCV," and Simms continued to complain of fatigue, malaise, dyspnea on exertion, and mild nausea.  The doctor again stated Simms "appear[ed] well."  (R. 434.)  On January 29, 2003, Dr. Kowalski noted Simms was six months into his therapy, and while Simms continued to experience side effects, he remained "clinically stable."  (R. 429.)  On May 28, 2003, Dr. Kowalski wrote that Simms evidenced low but stable white blood cell and hemoglobin levels; Simms continued to report insomnia, fatigue, decreased appetite, myalgias and arthralgias.  The doctor expected that by one month post therapy, Simms' blood counts would have returned to normal.  (R. 425.)

        **C.**        **Testimony before the ALJ**

At the hearing before the ALJ, Simms testified he suffered neck pain, pain in his arms,

and nerve damage as a result of his car accident in September 2002.  (R. 20.)  He testified his neck pain prevented him from staring straight ahead, and bending and twisting caused him neck and back pain.  (R. 22.)  He watched television while reclined, but had difficulty watching television sitting straight up because, after a few minutes, he would need to bend his head to take the pressure off his neck.  (R. 24.)  Simms stated he could not carry objects for any long period of time: he had problems lifting weights, carrying groceries, and leaning down to put on his shoes and socks.  (R. 23.)  Simms did his own laundry but needed a cart to load up his groceries.  (R. 34.)  While Simms could vacuum, he did not have the flexibility to scrub his bathtub.  (R. 23.)

Simms stated he had hepatitis C, but had been virus free for over a year prior to the hearing.  (R. 29.)  Although Simms had some depression, he was not taking any medication for depression; in response to the ALJ's query whether Simms was doing "pretty good in that regard," Simms stated, "I think so."  (R. 30.)

Simms testified that he took Imitrex for his headaches, but his insurance company did not provide him an adequate amount of pills.  He took Ibuprofin three times a day, and had been taking Oxycodone for approximately a year.  (R. 25-26.)  Simms testified his doctor told him to take ten milligrams of Oxycodone every six hours.  (R. 24.)  Simms claimed the Oxycodone caused him to rest for a couple hours in the morning and a couple hours in the afternoon.  (R. 25-26.)  Other treatments – the facet blocks, epidural, and physical therapy – purportedly did not result in any change in Simms' condition.  (R. 29.)

Before his car accident, Simms did maintenance work, landscaping, plumbing, and drywall for approximately five and a half or six years.  (R. 20.)  Prior to his job as a maintenance worker, Simms was a self-employed photographer for a couple of years.  (R. 21.)  Before that,

Simms did sporadic physical labor involving plastering for approximately eight years.  (R. 21.)

Simms testified that the weight of his professional photo equipment was approximately thirty to

fifty pounds.  (R. 31-32.)  He stated the field of photography had become more digital and he had

no experience in that area.  (R. 32.)

Simms lived in free housing because of his personal relationship with the housing

manager, who was also Simms' former employer and the pastor at his church.  (R. 34.)  He

received $215 per month from welfare, plus food stamps.  (R. 35.)

A vocational expert, Margaret Preno, also testified at Simms' hearing before the ALJ.

She found, according to Dr. Bittner's medical assessment, Simms would not be able to perform

any job requiring medium exertion, and would be precluded from operating moving machinery,

but would be able to perform the full range of work requiring light exertion.  (R. 40.)  Ms. Preno

found that Simms' building maintenance work was skilled work that required medium exertion,

and Simms' stuccoing and cement mixing work was unskilled and very heavy.  (R. 37-38.)  She

reported that photography work was skilled and required light exertion in general, but as

performed by Simms, it required medium exertion.  (R. 38.)  Ms. Preno noted, if the ALJ found

credible Simms' testimony that he had to lie down for several hours in the morning and several

hours in the afternoon, then Simms would be precluded from doing all work.  (R. 42-43.)

### D.    ALJ decision

The ALJ found Simms had severe impairments of degenerative disc disease and hepatitis

C, but the impairments were not severe enough, either singly or in combination, to equal one of

the listed impairments.  (R. 77.)  The ALJ reasoned that Simms presented no evidence of motor,

sensory, or reflex loss, nerve root compression, or focal neurological deficits under section 1/04

of the listings.  (R. 77.)  He noted that Simms' hepatitis C was stable and responded favorably to aggressive treatment.  (R. 77.)  He opined that Simms' subjective complaints suggested a greater level of severity than shown by the medical evidence.  (R. 78.)  Because the evidence showed Simms took care of his own personal needs and those of his pet dog, managed his finances, shopped, did household chores and gardened, the ALJ found Simms' allegations of disabling pain were inconsistent with his activities of daily living and not supported by the progress notes submitted by treating sources.  (R. 78.)  Based upon Dr. Bittner's functional report of December, 2004, the ALJ concluded that Simms retained the residual functional capacity to perform light work, and could return to his past relevant work as a photographer, since photography was light work.  (R. 78.)

## II.       REPORT AND RECOMMENDATION

The Magistrate Judge found the ALJ's decision was supported by substantial evidence, and the evidence of record did not support Simms' claim that the use of painkillers rendered him unable to do gainful employment.  The Magistrate Judge also found the ALJ did not err in finding Simms could return to his past relevant job as a photographer because he had experience in photography and, even though Simms described his past work as requiring a medium level of exertion, the ALJ could find Simms able to return to his past work as generally performed in the national economy.  The Magistrate Judge recommended that summary judgment be granted in favor of the Commissioner.

## III.      DISCUSSION

### A.       Background and standard of review

In order to qualify for SSI or DIB, a claimant must be "disabled" as defined under the

10

Social Security Act and accompanying regulations.  The Social Security Administration employs a five-step test to determine whether a person is disabled.  20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  At the first step, the Commissioner determines whether the claimant is doing "substantial gainful activity."  Id. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If so, the claimant is not disabled and his application is denied.  Id.  At the second step, the Commissioner decides if the claimant suffers from a "severe" impairment; if the claimant's impairments are not "severe," then he is denied benefits.  Id. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  At the third step, the Commissioner determines if the claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404 ("Listing of Impairments").  Id. at §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).  If so, the claimant is found disabled.  Id.

At the fourth step, the Commissioner finds if the claimant has sufficient residual functional capacity to do his past relevant work; if so, the claimant is not disabled.  Id. at §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  At step five, the Commissioner considers the claimant's residual functional capacity, age, education, and work experience, to determine if he can perform other work.  Id. at §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, then he is disabled.  Id. at §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps, then the burden shifts to the Commissioner at step five.  Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004).  Here, the ALJ found Simms was not disabled under the fourth step of the analysis because Simms had the residual functional capacity to do his past relevant work.

The role of this court on judicial review is to determine whether there is substantial

evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); Plummer v. Apfel, 186 F.

3d 422, 427 (3d Cir. 1999).  Substantial evidence is more than a mere scintilla but may be

somewhat less than a preponderance of the evidence.  Boone v. Barnhart, 353 F.3d 203, 205 (3d

Cir. 2003).  It is "such relevant evidence a reasonable mind might accept as adequate to support a

conclusion."  Id.  It is the responsibility of the ALJ to resolve conflicts in the evidence and to

determine credibility and the relative weights to be given to the evidence.  Plummer, 186 F.3d at

429; Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  Upon appeal to this court, the ALJ's

factual determinations, if supported by substantial evidence, are conclusive both as to findings of

fact and inferences reasonably drawn from that evidence.  See Fargnoli v. Massanari, 247 F.3d 34

(3d Cir. 2001).  This standard is set so the appellate court can perform judicial review and, at the

same time, avoid undue interference in the Commissioner's administrative functions.  Stewart v.

Secretary of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

       Notwithstanding this deference due to administrative decisions in disability benefit cases,

the ALJ must comport with proper procedures and apply proper legal standards.  Coria v.

Heckler, 750 F.2d 245, 247 (3d Cir. 1984).  The ALJ must do more than simply state factual

conclusions; he or she must include subsidiary findings to support the ultimate findings.  Stewart,

714 F.3d at 290.  Additionally, the ALJ must not only communicate the evidence supporting the

result, but also provide some indication of the evidence rejected.  Cotter v. Harris, 642 F.2d 700,

705 (3d Cir. 1981).

   **B.     Side effects of pain medication**

       Simms argues the ALJ did not consider the side effects of his pain medication,

Oxycodone, which causes him to sleep for several hours every morning, and several hours every

afternoon.  An ALJ must explain his or her rejection of a claimant's testimony regarding the effects of medication.  See Stewart, 714 F.3d at 290.  In Stewart, claimant testified he took valium and three or four percodan tablets a day.  Id. at 288.  He reported the pain medications made him feel "drugged," made it difficult for him to concentrate, and impaired his memory.  Id. The ALJ found claimant was not disabled without making an explicit finding as to the effect of the pain medications.  Id. at 290.  In view of the ALJ's failure to explain whether claimant's testimony concerning the effects of his medication was not credited or simply ignored, and the ALJ's failure to offer any justification for his action, the court found it necessary to remand for reconsideration and further findings.  Id.

Here, the ALJ explained he "must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 . . ."  (R. 78.)  He determined:

> "The claimant's subjective complaints suggest a greater level of severity than is shown by, or could reasonably be expected from the medical evidence.  He presents no evidence of motor, reflex, or sensory abnormality and has no focal neurological deficits; there is no evidence of gait abnormality.  His pain has generally responded well to conservative treatment and several progress notes indicate he occasionally takes over-the-counter medication, which is effective in relieving his pain.  The claimant is currently living rent free in an apartment complex where he used to do maintenance work, but claims he is not doing any maintenance work there at the present time.  He lives alone, takes care of his own personal needs and those of his pet dog, manages his finances, shops, and does household chores and gardening work (in April 2003 he admitted to one treating physician that he had pain secondary to excessive gardening over the weekend). The claimant allegations of disabling pain are inconsistent with his activities of daily living and are not supported by the progress notes submitted by treating sources."

(R. 78.)

13

It is unclear whether the ALJ rejected Simms' subjective complaints of pain only, or whether he also rejected Simms' subjective complaints regarding the side effects of his medication.  The ALJ's discussion of Simms' testimony is limited to his complaints of pain and description of daily activities.  Although the ALJ acknowledged Simms' testimony that he "takes frequent rest periods" (R. 78.), the ALJ did not explicitly consider whether side effects of Oxycodone may affect Simms' ability to work.

The only substantive statement about pain medication in 20 C.F.R. §§ 404.1529 and 416.929 explains that, in determining the nature and severity of a claimant's symptoms, the Commissioner will consider as one factor the "type, dosage, effectiveness, and side effects of any pain medication" the claimant takes to alleviate said symptoms.  See 20 C.F.R. § 404.1529(c)(3)(iv); 20 C.F.R. § 416.929(c)(3)(iv).  The ALJ's citation of §§ 404.1529 and 416.929, without more, is not sufficient to show he made an independent consideration of the side effects of Oxycodone when he decided to deny Simms benefits.[2]  It is clear that the ALJ's decision does not explicitly evidence consideration of the effects of Oxycodone.  But cf. Tyer v. Chater, 1996 WL 103833 at *2 (E.D. Pa. 1996) (ALJ decision concerning side effects of medication was supported by substantial evidence because: ALJ explained "the claimant's statements with regard to the nature and degree of severity of his impairment and symptoms are not reasonably support[ed] by the medical evidence, and are not fully credible"; ALJ evaluated claimant's subjective complaints pursuant to 20 C.F.R. § 404.1529; and ALJ weighed medical opinions relevant to his decision to deny benefits).

---

[2]The ALJ also acknowledged he must consider evidence based on Social Security Ruling 97-6P, but the ruling does not refer to side effects of medication.

14

The Court of Appeals further elaborated upon <u>Stewart</u> in <u>Burns v. Barnhart</u>, 312 F.3d 113 (3d Cir. 2002), where the ALJ specifically addressed the side effects of claimant's medication and found: though claimant reported to a doctor that he felt the medication made him "drowsy," the record contained "no significant complaints of side effects from medication"; the doctor noted claimant did not seem drowsy at the consultative examination; and claimant did not seem drowsy at the administrative hearing. <u>Burns</u>, 312 F.3d at 130-31. The court stated, "[d]rowsiness often accompanies the taking of medication, and it should not be viewed as disabling unless the record references serious functional limitations." 312 F.3d at 131. The court found there was no medical evidence as to physical limitations from side effects of medication, and the ALJ's decision to discount claimant's allegations of side effects was supported by substantial evidence. <u>Id</u>. at 131; <u>see also</u> <u>Powell v. Barnhart</u>, 437 F.Supp.2d 340, 343-44 (E.D. Pa. 2006) (ALJ properly dismissed claimant's complaints about drowsiness due to medication, where ALJ explicitly addressed the issue, found nothing in the record to support claimant's testimony regarding the need to take prolonged naps during the day, and substantial evidence supported the ALJ's decision).

The record evidence supporting Simms' description of the side effects of Oxycodone is sparse. Simms' testimony is supported only by a progress note by Simms' physical therapist, Dr. Amy Ivory, that Simms reported he was not having a good day, and he was fatigued because of his medication. (R. 197.) The Commissioner argues that, in contrast to Simms' testimony that he was told to take ten milligrams of Oxycodone every six hours, pharmacy records reveal Simms is provided only forty pills of Oxycodone at a dosage of five milligrams each every two or three months. (Def.'s Br. in Supp. of Summ. J. 7.) The Magistrate Judge noted that Simms'

15

treating physician, Dr. Bittner, did not find Simms' conditions rendered him unable to perform gainful employment.  However, the ALJ did not consider Simms' allegation of side effects at all. Even though there appears to be little record evidence supporting Simms' claim of drowsiness, the ALJ must explain whether Simms' testimony regarding side effects of pain medication was not credited or simply ignored.  Cf. Stewart, 714 F.3d at 290; see also Figueroa v. Secretary of Health, Ed., and Welfare, 585 F.2d 551, 554 (1st Cir. 1978) (though record contained no evidence whether the side effects of claimant's medication might be disabling, the ALJ should have sought further medical evidence, made some further inquiry, or, at the very least, made a finding on claimant's allegations regarding side effects so the reviewing court could know the allegations were not entirely ignored).

It was especially important for the ALJ to state the basis for his decision, because the vocational expert stated that if the ALJ found Simms' testimony on the side effects of Oxycodone credible, Simms would be precluded from all work.  The Commissioner's motion for summary judgment will be denied.  Because there is not substantial evidence in the record that Oxycodone causes Simms to sleep several hours in the morning and several hours in the afternoon, Simms' motion for summary judgment will also be denied.  Cf. Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (Court of Appeals should direct district court to award benefits only when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole shows the claimant is disabled and entitled to benefits).  The action will be remanded for explicit findings regarding the side effects of Simms' pain medication.

C.      **Past relevant work as a photographer**

16

Simms claims the ALJ erred at step four of the analysis in finding he could return to past relevant work as a photographer because he had testified he had very limited experience in photography.[3]  "Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).  Simms stated in his Social Security application that he worked as a photographer from 1993 to 1995; he also stated that as a photographer, he took photographs and processed and printed film.  (R. 111, 139.)  Simms, who bears the burden of proving he can no longer perform past relevant work, cannot fairly dispute that the duration of his employment was sufficient to enable him to learn photography skills.  Nor can he dispute that the employment was gainful.

Simms argues film photography has become obsolete and he has no experience in digital photography.  Under 20 C.F.R. § 404.1566(c)(4), a claimant is not "disabled" if his residual functional capacity and vocational abilities make it possible for him to do work which exists in the national economy, but he remains unemployed because of technological changes in the industry in which he has worked.  See also Ray v. Bowen, 813 F.2d 914, 916-17 (9th Cir. 1986) (claimant failed to establish inability to return to past work as CPA based on atrophy of skill,

---

[3]  The Magistrate Judge conducted a thorough analysis of this issue and Simms did not file any objections to the Magistrate Judge's findings regarding his past relevant work as a photographer; nor did he respond to the Commissioner's motion for summary judgment.  Under 28 U.S.C. § 636(b)(1)(C), the district court conducts a *de novo* review of those portions of the R&R to which objections are made.  In the absence of objections, the statute does not require the district court to review the magistrate judge's R&R before approving and adopting it, but the Court of Appeals has stated that the better practice is for the district court to review dispositive issues raised by the R&R.  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).  Therefore, the court reviews Simms' claims regarding his past relevant work as a photographer, even though Simms did not file any objections to the R&R on this issue.

despite that claimant showed: (1) his CPA license was endorsed "Not Licensed for Public

Practice;" (2) tax laws and accepted accounting practices had changed; (3) new accounting

library materials had been published; and (4) continuing education courses were offered).  At the

hearing before the ALJ, Simms testified that the field of photography had become more digital

and he had no experience with digital photography.  (R. 32.)  The transition from film to digital

photography is a technological change in the photography industry, so 20 C.F.R. §

404.1566(c)(4) clearly applies.  Simms produced no evidence that there are no longer positions

for film photographers in the national economy, or that his general photography skills cannot

readily be applied to digital photography.

Next, Simms argues the ALJ erred in finding he could return to his past work because the

vocational expert testified that his previous photography work required medium exertion, and

Simm's residual functional capacity only allows him to do light work.  Social Security

Regulation 82-61 states that a claimant will be found "not disabled" under step five of the

analysis if he or she retains the residual functional capacity to perform:

> "(1)   The actual functional demands and job duties of a particular past relevant
>        job; *or*
>  (2)   The functional demands and job duties of the occupation as generally
>        required by employers throughout the national economy."  S.S.R. § 82-61.

In order to be considered "disabled," a claimant must not only be unable to perform his

*particular* past job, but must also be unable to perform his past *type* of work.  See e.g., Martin v.

Sullivan, 901 F.2d 650, 653 (8th Cir. 1990) (claimant able to perform past relevant work as

stockroom attendant where, although unable to perform past job at light level as he had before,

he could perform job at sedentary level); Steward v. Bowen, 858 F.2d 1295, 1301 (7th Cir.

1988); Studaway v. Secretary of Health and Human Serv., 815 F.2d 1074, 1076 (6th Cir. 1987)

(claimant with residual functional capacity to perform light work could return to work as

custodian, even though former job as custodian required medium level of exertion, because

vocational expert testified there were 3,000 custodial jobs of light exertional level in claimant's

area); Jackson v. Bowen, 801 F.2d 1291, 1293-94 (11th Cir. 1986); Villa v. Heckler, 797 F.2d

794, 798 (9th Cir. 1986); Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981); Pelletier v. Secretary

of Health, Ed. and Welfare, 525 F.2d 158, 160 (1st Cir. 1975).

The vocational expert testified photography work required medium exertion as performed

by Simms in particular, but required only light exertion in general.  (R. 38.)  Simms has not met

his burden of proving that he can no longer engage in his past relevant work as a photographer at

a light exertional level.  Simms' motion for summary judgment will be denied.

### D.    Other issues

In his objections to the Magistrate Judge's R&R, Simms argued that the Magistrate

Judge: did not consider his chronic hepatitis C; did not rebut evidence of mild, left ulnar

neuropathy at the elbow, and moderate, chronic left C-7 radiculopathy; and improperly

disregarded Dr. Bittner's statement of March 29, 2005, that Simms' condition was chronic and

debilitating.  It is the role of this court to review the Commissioner's decision to determine

whether it was supported by substantial evidence.  42 U.S.C. § 405(g); Plummer, 186 F.3d at

427.  Because this court has conducted an independent review of the Commissioner's decision,

the argument that the Magistrate Judge did not adequately consider the evidence is without merit.

## IV.   CONCLUSION

The motion for summary judgment filed by Simms will be denied.  Disability has not

been clearly established and further delay to develop the record will not be unjust.  Cf. Morales,

225 F.3d at 320.   The motion for summary judgment filed by the Commissioner will be denied.

The action will be remanded for further proceedings consistent with this memorandum.  An

appropriate order will issue.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT B. SIMMS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **JO ANNE BARNHART, COMMISSIONER** | : | |
| **OF SOCIAL SECURITY** | : | |
| **ADMINISTRATION** | : | **NO.  05-6203** |

<u>**ORDER**</u>

**AND NOW**, this 26th day of July, 2007, upon consideration of defendant's motion for summary judgment, United States Magistrate Judge Linda K. Caracappa's Report and Recommendation, and plaintiff's objections to the Report and Recommendation, for the reasons stated in the foregoing memorandum, it is hereby **ORDERED** that:

1.  Plaintiff's motion for summary judgment (paper no. 7) is **DENIED**.

2.  Defendant's motion for summary judgment (paper no. 8) is **DENIED**.

3.  The Report and Recommendation (paper no. 10) is **NOT ADOPTED**.

4.  The action is **REMANDED** for further proceedings.

/s/ Norma L. Shapiro
S.J.